## SEMPLE v. McCRARY ET AL.

46  37
118  18

1. **Conveyance:** LIS PENDENS: BURDEN OF PROOF. O., who was the owner of certain lands subject to trust deeds, conveyed the same to his son. F. obtained a judgment against O. and in 1857 brought this action to set aside the conveyance as fraudulent and subject the lands to the payment of his judgment. Pending this suit the trust deeds were foreclosed and the purchasers thereunder subsequently sold and conveyed the lands to C., a married daughter of O. *Held:*

    1. That the pendency of the action did not prevent C. from acquiring title to the lands, such title being adverse to that of O.

    2. That her title was valid in the absence of proof that it was procured with the money of O.

    3. That the fact of her residence upon the premises with her father would not alone raise a presumption that the title was acquired with the income therefrom.

2. ———: REDEMPTION FROM TAX SALE: COSTS. A redemption of the land from tax sale by the plaintiff, during the pendency of his action to set aside the conveyance, entitles him to reimbursement therefor, but not to the costs of the action upon a judgment for the defendant therein.

*Appeal from Lee District Court.*

FRIDAY, APRIL 20.

THIS suit was commenced in 1857 by Jacob Freeman against Andrew Oberly *et al.* Its object was to subject certain real estate to the payment of a debt which Freeman held against Andrew Oberly. Afterward Freeman died and F. H. Semple, his administrator, was made party plaintiff, and Andrew Oberly died and A. J. McCrary, his administrator, was made party defendant. The other defendant, who is now the real party in interest, is L S. Coyne, a daughter of Andrew Oberly, deceased. The cause was continued from term to term; was referred, and a report made by the referee, exceptions to which were overruled, and in September, 1875, the court below rendered a decree for the plaintiff, and the defendant, L. S. Coyne, appeals. The further facts appear in the opinion.

*Craig & Collier*, for appellant.

*F. H. Semple*, for appellee.

ROTHROCK, J.—I.   Jacob Freeman and Andrew Oberly, original parties hereto, resided in the State of Pennsylvania. Oberly became indebted to Freeman in the sum of about $3,000, and to other parties in large amounts, and in 1836 he removed to Stark county, Ohio, leaving said indebtedness unpaid.   In 1837 Freeman recovered judgment in the State of Ohio against Oberly for $3169.61.   In 1840 Oberly removed with his family to Lee county, Iowa, and on the 31st day of March, 1857, he held the legal title to certain lands in said county, a part of which is the land now in controversy.   On the last mentioned day Freeman, with others, went to the house of Oberly and demanded payment of his judgment and interest.   No payment was made, and on the same day or the night following Oberly conveyed all his real estate to his son, Daniel Oberly.   On the next day Freeman sued out of the Lee District Court an attachment and levied the same on all of the said real estate, and afterward recovered judgment in said court for nearly $7,000.   This suit was commenced on the 25th day of April, 1857, to subject the said lands to the payment of said claim.

The defense on this branch of the case is, that the land in question was purchased with the money of Daniel Oberly, and that Andrew Oberly had no real interest therein, and that the conveyances to Daniel were not fraudulent.   The evidence on this branch of the case satisfactorily shows that Andrew Oberly, while residing in Pennsylvania, was a very improvident man; indeed, it seems that he lived principally by borrowing.   In his youth he lost his right arm by an accident, and was thus in a manner incapacitated for manual labor.   He left Pennsylvania with an old wagon and an indifferent team and less than $100 in money.   When he arrived at Fort Madison, in this State, he had but little or no property, and aside from the real estate in controversy he never afterward accumulated anything.   At the time of his removal to this State he was 51 years old.   Daniel Oberly, the son of Andrew, in the year 1841 came to Iowa and took up his home with his father.   Daniel was then 26 years old and unmarried.   In 1846 the family bought settlers' claims on the land in con-

troversy, and afterward, about 1852, the owners of 160 acres thereof conveyed the same to Andrew Oberly for $900. There was a trust deed made for the whole of the purchase money with interest at ten per cent, upon which no payment was made, excepting $172 in 1856. In 1854 the owners of 65 acres, being the residue of the land in controversy, conveyed the same to Andrew Oberly, who gave back a trust deed for most, if not all the purchase money. The title to the land was in this condition when Freeman made demand of his claim in 1857.

Without reviewing the evidence here as to the payments made for the settlers' claims, we will say that if it were not that Daniel Oberly permitted the title to remain in his father for several years, and allowed him to convey away a part of the land to other parties without objection, and only took title in himself when the Freeman claim was presented, we would be strongly inclined to hold that Daniel had a complete equity in these lands, and that they were never subject to the payment of Andrew's debts. However that may be, as we dispose of the case on another ground more satisfactory to ourselves, we will proceed to consider the claims of the plaintiff as against the appellant, L. S. Coyne.

II. After the commencement of this suit nothing was paid on the trust deeds given for the purchase money of the lands. Andrew Oberly and his wife, and Daniel his son, and L. S. Coyne, a married daughter, continued to live on the land. Andrew died in 1864, aged 75 years; and his wife, Susannah, died in 1872, at a very advanced age. L. S. Coyne, the daughter, with her family, still continued to reside on the land in controversy. She kept the house, and her father and mother, while they lived, remained members of the family.

1. CONVEYANCE: lis pendens: burden of proof.

The deed of trust on the 160 acres was foreclosed by notice, and sold in 1862 to one C. P. Birge for $1,600, being the amount due thereon, and in March, 1866, Birge conveyed 120 acres to said L. S. Coyne by quitclaim deed, and on the same day conveyed to Susannah Oberly, widow of Andrew, 40 acres for the period of her natural life, and after her decase to said

L. S. Coyne. The consideration paid to Birge was the same that he paid at the sale on foreclosure. In February, 1859, the trust deed on the 65 acres was foreclosed by notice and sale. Hon. Samuel F. Miller was one of the original owners, who conveyed to Andrew Oberly, and he purchased the land at the trustee's sale. In August, 1866, Miller conveyed the same to L. S. Coyne, for the same consideration paid by him, including interest, costs of sale, etc.

It is urged by counsel for appellee, and was held by the court below, that the purchase by Birge and Miller, and their conveyances to L. S. Coyne, were fraudulent as against the plaintiff herein, being the result of a combination made with Andrew Oberly to prevent the plaintiff from subjecting the land to the payment of the Freeman judgment. In this conclusion we cannot concur. The only possible theory upon which this position can be maintained is that the money paid to Miller and Birge belonged to Andrew Oberly. It is argued that the land was in equity the property of Andrew, and that Miller and Birge were paid from the proceeds of the land. This is assumed from the fact that L. S. Coyne and Daniel Oberly continued to live on the land and cultivate it. The referee reports that he cannot find how much land is in cultivation, and the record before us contains no evidence on that subject. We are unable to ascertain what its rental value was; whether it was more than sufficient to compensate the son and daughter for the support of their aged and infirm parents, we are unable to say. It cannot be claimed that as between the plaintiff and Daniel Oberly and L. S. Coyne, they were compelled to pay off these trust deeds for the plaintiff's benefit. We know of no equitable principle which would compel them to do so. It is claimed that the pendency of this suit precluded L. S. Coyne from acquiring any interest in the land adverse to plaintiff's claim. This would be true if she were claiming title under Andrew or Daniel Oberly; but her title is adverse to them, based on the foreclosure of the trust deeds. Her title is based on a lien superior to any claim which is or can be made by the plaintiff, and cannot be held to be fraudulent unless it be shown that

the money she paid for the land belonged to Andrew Oberly. It is for the plaintiff to show this by satisfactory proof. In this he has failed, unless we assume that there was a legal obligation resting on Daniel Oberly and L. S. Coyne to give the proceeds of their own labor for years to pay their father's debts.

The holders of the trust deeds had the right to foreclose, and we must presume that the plaintiff knew the condition of the record title. If he desired to avail himself of Andrew Oberly's interest in the land, it was his right to redeem, or make the holders of the superior liens parties to this suit. Having failed to do this, and allowed the trust deeds to be foreclosed and title to be acquired thereunder, the only way he can set aside and avoid the title thus acquired is to show that they were acquired with the money of Andrew Oberly.

III. It appears from the evidence that, pending this suit, the plaintiff, on the 12th day of December, 1867, redeemed

2. ——: re-  the lands, or a part thereof, from tax sale, and
demption
from tax sale: paid for such redemption the sum of $262.38.
costs.  As the defendant Coyne, in her cross-bill, asks that her title be quieted as against plaintiff, this sum, with interest, should be repaid. The judgment of the court below is reversed, and the title to the land in question is quieted in L. S. Coyne, upon payment of said sum of $262.38, with interest at six per cent from Dec. 12, 1867; and she may have decree accordingly in this court or the cause will be remanded to the court below for that purpose.  REVERSED.

BECK, J., having been of counsel, took no part in the determination of this cause.

### ON REHEARING.

ROTHROCK, J.—After the filing of the foregoing opinion, a petition for rehearing was filed by appellee, which we have considered.

The argument of the petition is mainly directed to the proposition that, as before the foreclosure of the trust deeds the land was the property of Andrew Oberly, and L. S. Coyne

and Daniel Oberly continued to reside on the premises with their father, the money which was paid to Miller and Birge was the proceeds of the land, and that, therefore, the land should be held as a trust for the benefit of the creditors of Andrew Oberly.

As L. S. Coyne holds her title under the trust deed, it was incumbent on the plaintiff to show that she acquired her title with the money of Andrew Oberly. The mere fact of her residence on the land falls very far short of making such showing, especially where it is not shown how much of the land was in cultivation, and as a consequence no estimate of rents and profits can be made.

It is further claimed, in a supplement to the petition for rehearing, that because the plaintiff redeemed the land from tax sale, he should recover not only the amount paid for such redemption and interest, but also the costs of this action.

The redemption from tax sale was made pending the suit. The whole controversy was as to the right of plaintiff to subject the land to the payment of his debt. The defendant L. S. Coyne is the successful party on that issue. We are unable to find that any costs were made upon the claim for reimbursement of the amount paid for the redemption from tax sale. Under these circumstances we do not think plaintiff is entitled to costs.

REVERSED.